# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY and JAMES S. JORGENSEN, <br><br> Plaintiffs, <br><br> v. <br><br> EAGLE AMERICA CORPORATION, <br><br> Defendant. | No. 07 C 6576 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and James S. Jorgensen, Administrator (collectively "the Funds"), bring this suit against Defendant Eagle America Corporation ("Eagle America" or "the Company") under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(e), and the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a). The Funds claim that Eagle America has violated these laws by failing to make proper employee benefit contributions, failing to pay proper union dues, and failing to maintain a surety bond to guarantee the payment of wages and contributions. The Funds now move for summary judgment on their claims. For the following reasons, the Court GRANTS summary judgment in favor of the Funds and against Eagle America. However, the Court requires supplemental briefing in order to determine the proper amount of damages.

1

## I. Factual Background

Eagle America supplies and installs large appliances in residential units in high-rise buildings. The work performed by the Company includes picking up cabinets and appliances from warehouses, delivering them to the job site, and unloading and installing appliances that have been delivered directly to the job site. (Pl. Rule 56.1(a)(3) Statement (Pl. St.) ¶ 3.) Eagle America has no control over the scheduling at its job sites, including the delivery of some appliances or the use of loading docks and elevators. (Def. Rule 56.1(b)(3)(C) Statement of Additional Facts (Def. Add'l St.) ¶ 3.)

At all relevant times, the Company has been party to a collective bargaining agreement (CBA) with the Construction and General Laborers' District Council of Chicago and Vicinity ("the Union"). (Pl. St. ¶4.) The CBA contains a number of provisions that are relevant to this dispute.

First, the CBA obligates Eagle America to remit contributions to the Funds on behalf of covered employees for pension benefits and health and welfare benefits; to make similar contributions to other benefit and labor-management funds; to deduct Union dues from the wages of its employees; to remit those dues to the Union; and to submit monthly remittance reports regarding these contributions and dues. (Pl. St. ¶ 8.) The CBA also designates the Funds as the collection agent for all of these payments. (Pl. St. ¶ 10.) Eagle America must make these payments for "each hour worked" by its employees. (Pl. St. ¶ 8.)

Second, under the heading "Reporting for Work," the CBA states:

> Any Laborer reporting for work upon order expressed or implied by the Employer or his Agent and not put to work for any reason, except weather conditions, fire, accident or other unavoidable cause, shall receive four (4) hours' pay for lost time. Weather conditions shall be an exception to the requirement for "show up" or reporting pay provided the Employer has notified the Employee

> by telephone or has required in writing that the Employee call before he departs from home...When Laborers are directed to wait during inclement weather by the Employer...they shall be paid for such waiting time.

(Def. Add'l St. ¶ 6, Ex. 3 & 4.)

Third, the CBA requires Eagle America to produce books and records for a payroll audit to determine whether contributions were underpaid. (Pl. St. ¶ 13.) The Funds' designated auditors from the accounting firm of Bansley and Kiener, L.L.P., conducted two payroll audits of Eagle America's records that are relevant to this case, and prepared a report based on each. (Pl. St. ¶¶ 14 & 15.) In preparing the audits, the auditors reviewed all of the documents presented by the Company, including bank statements, payroll records, W-2s (for every year except 2008, W-3s (for every year except 2008), quarterly UC-3 tax forms (for every year except 2006), one 941 tax form for each audit period, and time sheets (which Eagle America only provided for the second audit). (Pl. St. ¶ 16.) Eagle America did not produce any documents reflecting the specific duties performed by employees, or documents reflecting that employees spent certain amounts of time performing specific duties or tasks. (Pl. St. ¶ 19.) The first audit covered the period from June 1, 2004 through June 30, 2007 and the resulting report (the "June 2004 Report") indicated that Eagle America owed $7,544.57 in contributions and dues for that period. (Pl. St. ¶ 14.) The second audit covered the period from July 1, 2007 through February 29, 2008 and the resulting report (the "July 2007 Report") indicated that Eagle America owed $27,463.00 in contributions and dues for that period. (Pl. St. ¶ 15.) The auditors determined that Eagle America's underpayment was the result of the Company's under-reporting hours worked by its employees. (Pl. St. ¶ 20.) In support of its case, Eagle America has submitted its own report to the Court regarding the period covered by the July 2007 report. (Def. Add'l St. ¶ 10 & Ex. 7.)

Finally, the CBA requires Eagle America to procure, carry, and maintain a surety bond, in an amount no less than $5,000, to guarantee payment of wages and contributions. (Pl. St. ¶ 9.)

## II. Standard of review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. V. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## III. Analysis

### A. Surety Bond

The Court first disposes of the simple issue of whether Eagle America maintains a surety bond as required by the CBA. In its responsive brief and statements, Eagle America fails to deny that the CBA requires it to procure, carry, and maintain such a bond. The Company also fails to deny that it does not maintain such a bond. Instead, the Company states that it "neither admits nor denies" these facts, "but states that the [CBA] speaks for itself." (Def. Resp. St. ¶ 9.) This "non-response" is indicative of Eagle America's general failure to properly adhere to the

requirements of Local Rule 56.1 in responding to the Funds' Rule 56.1(a)(3) Statement of Material Facts. In most instances, Eagle America simply states "Admits" or "Denies." None of these responses follows the directives of Rule 56.1(b)(3), which require the Company to provide: a concise summary of the paragraph to which they are responding, LR 56.1(b)(3)(A); a response, LR 56.1(b)(3)(B); and, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon," *id.* As a result, the Court accepts virtually all of the Funds' 56.1 Statement as admitted. *See* LR 56.1(b)(3)(C); *EEOC v. Cast Products, Inc.*, No. 07 C 5457, 2009 WL 595935, *1 n.2 (N.D. Ill. Mar. 9, 2009) ("neither admits nor denies" is an insufficient response under the local rules); *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000) ("a general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial"); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000) (noting that the Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment"). These admissions obviously prove fatal for Eagle America in the case of the Funds' request that the Company maintain a surety bond as required by the CBA. As there is no dispute regarding this matter, the Court grants summary judgment in favor of the Funds on the issue, and orders Eagle America to procure, carry, and maintain such a bond.

## B. Contributions and payments

The Funds claim that Eagle America owes the amounts described in the audit reports, as well as additional interest and fees contemplated by the CBA. Eagle America disputes this claim, however. First, the Company argues that the "Reporting for Work" provision of the CBA exempts it from making contributions for hours during which its employees were not actively

5

working because of what it believes were "unavoidable causes." Second, even assuming that it was responsible for contributions based on these hours, it disputes the figures in the audit reports. As noted above, the Company has thus submitted its own report regarding the period covered by the July 2007 Report, in which it points to certain purported deficiencies in the audit reports provided by the Funds.

### 1. "Idle hours"

Before determining whether there is a genuine dispute as to the accuracy of the audit reports, the Court must analyze the controversy over whether Eagle America is responsible for contributions to the Funds for every hour that a covered employee showed up to work. The controversy essentially boils down to a dispute over whether the requirement that Eagle America make contributions for "each hour worked" covers hours when employees are at the job site waiting for appliances to be delivered or loading docks and elevators to become available.

Eagle America argues that these were not "hours worked" because its employees were idle during these hours due to causes that were "unavoidable" from the Company's perspective. The Company points to the CBA provision requiring the Company to give four hours payment for time lost to employees reporting for work who are not put to work. The Company notes that the provision contains an exception for occasions when the Company cannot put employees to work for "unavoidable causes." The parties agree that the Company often has no control over whether appliances, elevators, and docks are available. Thus, the Company argues, because the CBA does not require the Company to pay the employees for these "idle hours," it need not make contributions for these hours.

The Funds argue that the provision regarding "unavoidable causes" is irrelevant. Instead, they look to federal rules interpreting the Fair Labor Standards Act (FLSA) for guidance on the issue of what constitutes an "hour worked." According to those rules, which clarify the concepts

of compensable time and time worked under the FLSA, "[a]n employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes *is working* while 'on call.'" 29 C.F.R. 785.17 (emphasis added). Eagle America argues that even if the Court looks to the FLSA as a guide, the question of whether waiting time is to be considered working time is a "question of fact to be resolved by appropriate findings of the trial court," *Skidmore v. Swift*, 323 U.S. 134, 136-37, 65 S. Ct. 161, 163, 89 L. Ed. 124 (1944), and urges the Court to deny summary judgment on that basis.

This lawsuit does not arise under the FLSA. However, in construing the terms of a contract, the Court will take the legal framework in place into account. *Florida E. Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125, 1129 (7th Cir. 1994). The Court may assume that the parties understood the law in effect at the time of the CBA's execution and interpret the term accordingly. *Id.* at 1129-32 (construing settlement agreement not to apply in situations where it would be illegal). Thus, the Court will assume that the parties intended the CBA to require Eagle America to compensate its employees for all hours that are compensable under the FLSA.

The *Skidmore* Court refused to "lay down a legal formula" as to which "waiting hours" are compensable, holding that courts must address the issue as a case-specific question of fact. 323 U.S. at 136-37, 65 S. Ct. at 162-63. While the interpretive rule cited above is more specific, it does not bind the Court. *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 940 (9th Cir. 2004) (citing *U.S. v. Mead Corp.*, 533 U.S. 218, 232, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)). Nonetheless, courts have frequently looked to the rules for guidance in disputes under the FLSA, *id.* (compiling cases), and, as the rule suggests, the question of whether an employee must remain on or near the premises while waiting is often a factor in the courts' determinations. *See, e.g., Armour & Co. v. Wantock*, 323 U.S. 126, 133-34, 65 S. Ct. 165, 168-69, 89 L. Ed. 118

(1944) (affirming judgment in favor of firefighters who could spend time on call playing cards and engaging in other "amusements," but who were required to remain on premises); *see also Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 351-54 (9th Cir. 1992) (compiling factors, distinguishing cases in which employees had to remain on, near, or were frequently called back to premises). In cases where on-premises hours were not considered "working hours," the workers were allowed to use their time on premises for long resting periods, eating, and engaging in recreational activities. *See, e.g., Allen v. Atl. Richfield Co.*, 724 F.2d 1131, 1137 (5th Cir. 1984) (reversing summary judgment to plaintiffs because they were "free to sleep, eat at no expense, watch movies, play pool or cards, exercise, read, or listen to music during their off-duty time"); *Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245, 1248 (5th Cir. 1986) (affirming dismissal of claim by plaintiffs who were "free to sleep, eat, watch television, watch VCR movies, play pingpong or cards, read, listen to music, etc....[and] seldom or never did any physical work after their shift ended").

In this case, Eagle America has provided no facts to call into dispute whether the "idle hours" spent on the jobsite by its employees were in fact "hours worked." Instead, the Company points to the contract language regarding "unavoidable cause" and stresses that this is a question of fact. However, Eagle America cannot survive the summary judgment phase of these proceedings merely because there is a question of fact involved. The Court will deny summary judgment if there is a "genuine issue as to [a] material fact." Fed. R. Civ. P. 56(c). Eagle America is correct that in instances of uncertainty regarding whether "hours waiting" are "hours working" the Court "must take account of the arrangement plaintiffs themselves chose." *Dinges v. Sacred Heart St. Mary's Hospitals, Inc.*, 164 F.3d 1056, 1059 (7th Cir. 1999). In other words, the Court will look to the CBA in cases of uncertainty. However, given Eagle America's failure

to put forward any facts regarding the freedom its workers have while waiting for deliveries, loading docks, and elevators, the Court does not find uncertainty in this case.

Assuming for the moment that there is some level of uncertainty, however, and that the CBA is relevant, the Court does not stray from its decision. The Company reads the referenced CBA provision to apply to situations when employees are waiting for elevators and the like. However, the Court reads the provision differently. The provision, which appears under the heading "Reporting for Work," applies to employees "reporting for work" but "not put to work." The CBA generally requires Eagle America to pay these employees four hours' worth of pay for "lost time." Under the Company's reading, employees would receive this four hours' pay regardless of whether they were sent home immediately or were sent home after waiting on the jobsite for eight hours. Or, in the case at issue here, when the Company does not put an employee to work for an "unavoidable cause" such as a late delivery, the employee might be paid nothing for waiting eight hours. The provision makes much more sense if it applies only in situations when an employee is sent home and unable to work the hours that he or she expected to work and not in situations when the employee is required to remain on premises waiting for hours at a time or waiting for minutes between tasks for an entire day.

This reading of the provision finds support in the text of the provision itself. While the Company focuses on the fact that it need not provide any pay in instances of "other unavoidable cause," the CBA also exempts the Company from paying employees when they are not put to work because of "weather conditions, fire, [or] accident." In cases of inclement weather, however, the CBA requires the Company to pay employees for hours spent waiting for the weather to clear up. Moreover, in the provision regarding inclement weather, the CBA alternatively refers to "reporting pay" as "show up" pay. These provisions lend a great deal of

support to the notion that the parties to the CBA intended for the "Reporting for Work" provisions to require four hours' pay for employees who "show up" for work but are sent home. They also support the notion that the parties intended workers to get paid for hours spent waiting. Finally, the Court finds further support in the fact that the CBA provides specific exceptions for "weather conditions, fire, [or] accident," but not for the circumstances at issue in this case. If all parties understood that employees would regularly be required to wait for elevators, loading docks, and deliveries, and they intended for those circumstances to be covered by this provision, it seems unlikely that they would not have included an explicit reference to those circumstances.

The FLSA overrides contracts, so agreements such as the CBA are only relevant in close cases. *Dinges*, 164 F.3d at 1059. Eagle America has not placed material facts in this case in dispute, and it is therefore not a close case. Furthermore, the Court's interpretation of the CBA favors the Funds. Thus, even making all inferences in favor of the Company, the Court can resolve this question of fact on summary judgment. The Court therefore grants summary judgment in favor of the Funds on the issue of liability.

### 2. Amounts owed

The Court must next address the question of how much Eagle America owes the Funds. The Funds correctly point to another case in which they attempted to collect unpaid contributions from an employer, *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735 (7th Cir. 2004), for support of their argument that the Company must provide some evidence rebutting their audit reports. In that case, just as in the instant case, the employer kept no records reflecting the type of work performed by its employees. *Id.* at 739. Given this failure to keep records, the Seventh Circuit found that once the Funds had provided an apparently sound audit report, "the burden was on [the employer] to establish a genuine issue of material fact barring summary judgment." *Id.* at 738-39 (citing *Chicago Dist. Council of Carpenters Pension Fund v.*

*Reinke Insulation Co.*, 347 F.3d 262, 265 (7th Cir. 2003)). The employer in that case only provided an affidavit from its owner setting forth conclusory allegations regarding five employees that supposedly performed work not covered by the CBA. *Id.* at 739. The court found that this was not enough to meet the burden, and affirmed summary judgment in favor of the Funds. *Id.*

This case differs slightly from *RES Environmental Services*. Here, Eagle America fails to even provide an affidavit in opposition to the June 2004 Report. Instead, the Company simply states in its response that the Funds fail to provide adequate support for their accounting. While the documents that the Funds have attached are indeed simplified summaries of the data audited, the Company has failed to put their findings into dispute. The Company admits that the auditors relied upon the correct records, and has had the opportunity to show how those records belie the June 2004 Report, but has failed to do so. The Company has also decided not to argue with the Funds' calculation of liquidated damages, interest, and audit costs. Thus, the Court awards the Funds the entire amount of relief they seek with regard to the period covered by the June 2004 Report. This relief totals $11,120.59, plus any interest that has accrued since January 22, 2009.

Eagle America has provided its own calculations in order to dispute those provided by the Funds in the July 2007 Report. While the Funds complain that these calculations are unsupported by the Company's records, the Court notes that it is in no better a position to determine that Eagle America's report is unsupported by the records than to determine the same about the July 2007 Report. Both reports lack any supporting documentation. In this regard, this case is distinguishable from *RES Environmental Services*. Thus, the Court orders the parties to provide supplemental briefs in order to determine the amount of relief, if any, due to the Funds with regard to the period covered by the July 2007 Report.

## *CONCLUSION*

For the above reasons, the Court GRANTS Plaintiffs' motion for summary judgment on all of their claims. The Court orders Defendant to procure, carry, and maintain a surety bond as required by the CBA. The Court also awards Plaintiffs' $11,120.59 plus interest in relief for the period covered by the June 2004 Report. Finally, the Court orders the parties to supplement their briefs regarding the issue of damages for the period between July 1, 2007and February 29, 2008.

IT IS SO ORDERED.

12/1/09
Dated

Hon. William J. Hibbler
United States District Court